## TIMOLEON CHAUVIERE *v.* MRS. FLIEGE et al.

Where a community of acquets exists, property purchased, whether by the husband or wife, belongs to the community unless the contrary be proved, (C. C. 2371,) and the debts contracted during the marriage, must be acquitted out of the common fund; the wife's separate property is not liable for them, although she may have given her promissory note, secured by mortgage upon her property, for the payment of such debts.

To be a public merchant, the wife must carry on a separate trade from her husband. C. C. 128. The separate property of the wife is liable for frauds committed by her.

APPEAL from the Second District Court of New Orleans, *Lea, J. Grandmont and Preaux*, for plaintiff. *Dufour* and *Train*, for defendant. The judgment of the court was pronounced by

PERSTON, J. The defendant, *Mrs. Fliegé*, is sued as the drawer of a promissory note in favor of *T. Myers & Co.*, and endorsed to the plaintiff. A special mortgage is claimed upon a lot of ground in New Orleans by virtue of an act of mortgage executed before *Barnett*, notary public, dated the 9th day of November, 1849.

*Mrs. Fliegé*, authorized by her husband, answers that her free consent was never given to the execution of the note and mortgage sued upon, and that the mortgage was illegally and fraudulently obtained to secure the payment of goods sold and delivered to her husband, for his own trade, use and profit, no part of which inured to her benefit, and that the debt was contracted by him and not by her.

Her counsel invokes the protection of article 2412 of the code, which prescribes, that "the wife whether separated in property by contract or judgment, or not separated, cannot bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage."

It is fully proved that the property mortgaged to secure the note belongs to *Mrs. Fliegé* and her minor child, and that her undivided portion of the lot is her paraphernal property, and that the note and mortgage was given for merchandise purchased after her marriage with *Fliegé*.

The marriage of the defendant with *Mr. Fliegé* superinduced of right a community of acquets between them, as nothing is shown to the contrary. Code, 2369. The property purchased by them belongs to this community, whether purchased by one or both of them, until the contrary is proved; (art. 2371,) and the debts contracted during the marriage must be acquitted out of the common fund; (art. 2372) and under this and article 2412 the wife's separate property is not liable for them. For the husband is the master of the community, and, as to movable property belonging to the community, can give it to whom he pleases without the consent of his wife, who has no control over it.

The debt for which the note and mortgage was given in this case was therefore the debt of the husband, and the wife's separate property is not liable for it, unless something takes it out of these general principles; because the payee and mortgagees were as well acquainted with our laws on this subject as she was. And if it had been clearly understood that she purchased the goods, for which the note and mortgage was given, still, according to the very words of the code, they would have been the husband's goods, and the unpaid price his debt.

A principal ground on which it is attempted to render the defendant liable in this case is, that she was a public merchant, and obligated herself in a matter relating to her trade. This was not expressed in the note or mortgage nor alleged in the pleadings, but was almost the whole point to which the evidence was directed. To be a public merchant, a wife must carry on a separate trade from her husband. Code, article 128. To render her liable for merchandise purchased by her, it should clearly appear by evidence that her business at the time of the purchase was public and separate from her husband.

It it proved that *Mrs. Fliegé* traded as a merchant while a widow; but the record furnishes no evidence that she carried on business at all, much less separate from her husband, after her marriage.

CHAUVIER
*v.*
FLIEGE.

It is urged that she purchased the goods, for which the note and mortgage was given, for the purpose of becoming a public merchant, and if she did not use them for that purpose she committed a fraud upon the vendors, and is therefore liable. The general rule, that the separate property of the wife may be rendered liable for her frauds, is not disputed; but upon the question whether a fraud was committed or not by her, the district judge, after the examination of much testimony, came to a conclusion in her favor, and we cannot say he erred.

A wife should not be so easily subjected to the imputation of fraud for acts done in presence of her husband, as for those over which he had no control: thus, a wife cannot be convicted of a larceny committed jointly with her husband, unless it be clearly shown that she was the instigator of the offence.

The clerk of *Myers & Co.* who, as endorsers of the note, are the real plaintiffs in this case, testifies that *Mrs. Fliegé* purchased the goods; but he states that *Mr. Fliegé.* the husband, was present; and the very day they were purchased he made out the account, stating that *Mr. Fliegé* had bought the goods of *S. Myers & Co.*, and receipted to him for them

The account he gives of this, weakens very much his testimony, as the basis of a charge of fraud against *Mrs. Fliegé.* He says what induced him to make out the bill as it is made out, was that he did not know whether the goods bought by *Mrs. Fliegé* were for her own account or for that of her husband, but when he heard afterwards how the transaction was, he forgot to alter it. And yet the only thing tending to criminate *Mrs. Fliegé* is proved by him alone, and is inconsistent with the above statement: it is, that she declared to *Myers* at the time the goods were purchased, that she was going to open a store in Bienville street, and that *Fliegé* said he had nothing to do with the goods. The fact that he heard that *Mrs. Fliegé* gave a note and mortgage for the goods, may have had an influence on the memory of this witness, of which he is unconscious. He never saw the store on Bienville street, nor *Mrs. Fliegé* but on this occasion.

It is impossible to charge the wife with the debt, on the ground that she perpetrated a fraud, on such loose and unsatisfactory testimony of a single witness, in the employment of the party interested in establishing it. A little inquiry made by this clerk, or the trouble which *Myers* took in going with *Fliegé* and wife to the store of *Dunbar & Co.*, would have satisfied him that she could not be considered a public merchant doing business separate from her husband; and even if, in the superabundance of female conversation, she loosely mentioned that she was going to open a store, under the circumstances, her husband being present, in legal contemplation it would have meant the store of the community, and should have been so understood by those acquainted with our laws. To charge her separately, the bill should have been made out in her name as a public merchant; and perhaps for their security the vendors should have seen that, as such, she opened the store for herself.

The bill of goods purchased from *Dunbar & Co.*, was made out in the same manner as being bought by *Monsieur Fliegé;* and *Mr. Dunbar* testifies that he sold them to a gentleman and lady who came with *Mr. Myers*, on his acceptance.

Except the statement of *Myers'* clerk of the declaration of *Mrs. Fliegé,* as to her future intention which, if rightly recollected, is but weak testimony, and on which he did not act at the time in making out the account of sales, there is no evidence in the record to charge *Mrs. Fliegé* as a separate purchaser of the goods, or as guilty of a fraud.

Many witnesses were examined, who show that *Mr. Fliegé* opened and kept the store publicly, and that his wife attended to her domestic concerns, and never

held herself out as a merchant carrying on a business separate from her husband after her marriage.

There is no evidence that the contract or property purchased inured to her separate benefit more than any other community contract or property; and the case cannot be distinguished from the long list of cases in which creditors have, unsuccessfully, attacked wives in community on their contracts, commencing with our earliest reports and ending with some decisions during the last year which are not even yet reported. See. 7 O. S. 484; and the case of *Count de Gaalon* v. *Mrs Girod*—not yet reported.

That the defendant gave her note and mortgage to set up her husband in business, he having none, there is no doubt; and having been in the same line of business before her marriage, she aided him with her experience in making purchases. Our laws presume the marital influences which produce such contracts. It is exercised in private; neither husband nor wife ever proclaim it. The articles of the code for the protection of the wife, are based entirely on the presumption of its existence without proof. The business of her husband having proved unfortunate, the wife has chosen to avail herself of the protection to her weakness which those articles afford; and it cannot be denied by the courts, whatever we may think of the legislation.

The judgment of the district court is affirmed, with costs.